Mr. Parkman. Yes, sir. Mr. Parkman, please proceed. Thank you. If it pleases the court, when Social Security promulgated the medical vocational rules, which we will call the GRID, it simultaneously published the several Social Security rulings cited in Appellant's brief to guide decision makers in how to use the GRIDs in cases that did not exactly line up with the GRID's directions. The ALJ failed to follow the binding mandate of those rulings, resulting in legal error that left the decision unsupported by substantial evidence. The ALJ found that Mike Butler was over age 50, a fact Social Security recognizes may seriously affect the ability to adjust to other work. While Butler had the strength to perform light work, he also had multiple not significant non-exertional limitations. As Butler could not return to his past work, Social Security bore the burden of proving that he had a reasonable opportunity to make an adjustment to other work. SSR 8310 explains that, quote, the issue of work adjustment is determined based on the interaction of the work capability represented by the worker's residual functional capacity, in other words, the remaining occupational base, with the other factors affecting capability for adjustment, age, education, and work experience, end quote. The GRIDs provide the beginning point for that analysis. Each numbered rule includes an administrative determination whether a work adjustment should be possible. As Butler was over 50, if he could still perform the full range of unskilled light work, his claim would be denied. But if he could only perform the full range of unskilled sedentary work, his claim would be approved. The rulings state that the unskilled light occupational base has about 1,600 occupations, which include approximately 200 unskilled sedentary occupations. Because of Butler's multiple non-exertional limitations, he could not perform a full range of light work. This required the ALJ to use SSR 8314 as a framework for evaluating this combination of exertional and non-exertional impairments. SSR 8314 explains, quote, after it has been decided that an impaired person can meet the primary strength requirements of a given level of work, a further decision may be required as to how much of this potential occupational base remains, considering the non-exertional limitations which the person may also have. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base, the remaining portion of the job base will guide the decision. Where the adjudicator does not have a clear understanding of the effects of the additional limitations on the job base, the services of a vocational specialist will be necessary, end quote. The ALJ made no effort to consider the degree to which Butler's many non-exertional limitations eroded the unskilled light occupational base. Mr. Parkin, I don't understand why the vocational expert's testimony wasn't in essence in compliance with SSR 8314 to address precisely this problem. SSR 8314 provides, in essence, Your Honor, that there needs to be a comparison of the light occupational base. The light occupational base is 1,600 jobs, the sedentary 200. Job-wise, this light occupational base is about 8.5 million jobs, according to Professor Dubin's article that we submitted. And the vocational expert said that the sedentary occupational base has 702,000 jobs. If the vocational expert only gives the ALJ testimony that Mr. Butler can perform three occupations that encompass 136,000 jobs, that was the extent of the evidence the ALJ secured to sustain SSA's burden of proof. And the sedentary occupational base, which would have allowed Butler consists of 137 occupations, 702,000 jobs. We submit that the ALJ was obligated to at least explore how much, how close Butler's capacity for making a vocational adjustment was to the overall size of the sedentary occupational base. I don't understand your counterfactual here, because as I understand it, you're not challenging their finding on the residual functional capacity, correct? We are not. Okay. Given that, as I understand it, even apart from age, he can't do the unskilled sedentary work because they all require bilateral dexterity with the hands. True. So they're out. But the statutory standard is, in essence, any gainful work, any gainful activity available in the national economy in substantial numbers. And we've got the vocational experts saying, well, here, you can be skeptical about it, but here are three categories of work that he can still do that exist in substantial numbers. Why do I need to do these additional calculations that you're proposing are required? And I'm not quite sure I get that out of the Social Security rulings. The judge, the ALJ, said to determine the extent of erosion, well, this court's case law in Wormuth and in DeFrancisco, which deals with exertional limitations, Wormuth and non-exertional limitations, indicated that the ALJ had a duty to make an inquiry of the vocational expert of the degree of erosion of the higher occupational base. And SSR 8314 provides, Your Honor, that if the number of occupations and number of jobs to which Butler might make a vocational adjustment was smaller than or close to the size of the sedentary occupational base, then using the grids as a framework for decision-making would point to his case being an allowance. Go ahead, sir. Can you point me to the specific language in 8314 that you're relying upon? Just one moment, sir. Well, as I quoted, after it has been decided that a person meets a strength requirement, a further decision may be required as to how much of the potential occupational base remains considering the non-exertional limitations which the person may have. And where it's clear that those additional limitations have significantly eroded the exertional job base, the remaining portion of the job base will guide the decision. And where the adjudicator does not have a clear understanding of the effects of those of a vocational expert, a vocational specialist will be needed. It was legal error. Right. And I'm sorry if I don't mean to be difficult about this. I understand that so far, but then there's a vocational expert testifying about this. What's missing? What's missing, Your Honor, is that there was no inquiry as to how the job, how Butler's non-exertional limitations eroded the number of occupations that he could perform. The only evidence before the ALJ was that Butler could perform three occupations consisting of 136,000 jobs. But at the same time, if Butler could perform the full range of sedentary work, 137 occupations that consist of 702,000 jobs, his claim would be allowed. The grids, the ruling requires that the judge make a comparison. The judge needs to know the sizes of the two occupational bases. Then he needs to conclude how much the higher occupational base is eroded. And then he needs to make a comparison of the remaining occupational base available to Butler to make a vocational adjustment. Your Honor, we submitted it to the Appeals Council, a rebuttal vocational report that said with Butler's constellation of problems, he could perform a total of 23 light occupations. He could perform virtually no sedentary occupations. Now, Butler would be allowed. Sorry, sorry. If your position is he could perform 23 light occupations, why isn't this case over? This case is not over because Butler's capacity, if using the grids as a framework for decision making, the judge needed to compare that size, 23 occupations, to the size of the sedentary occupational base, 137 occupations, under which he would have been allowed. It's not logical and no reasonable mind should come to a conclusion that if Butler would be approved, if he could perform 137 sedentary occupations, 702,000 jobs. But he can't. That's the hypothetical that's totally counterfactual. But it's not counterfactual because the grids provide that, Your Honor, as a matter of law, being over 50, unable to return to his past work. If Butler can, if he could only do that, 702,000 jobs and 137 sedentary occupations, his claim would be allowed. Now, if he only has the capacity to perform 23 light occupations, his opportunity to make a vocational adjustment, which is what Social Security bears the burden of proving, is substantially less than someone who could perform the full range of sedentary work. Okay. Thank you, Mr. Bergman. Yes, sir. Thank you. Thank you, counsel. Mr. Montenegro. Good morning. My name is Leo Montenegro, appearing for the defendant appellee, Commissioner of Social Security. Please let me know if you have difficulty hearing me. I'm using alternative backup hardware today, having problems with my agency computer. Yes, Your Honor. You're good here. If you'll allow me to step back. This case involves what's known as step five of the five-step sequential evaluation in which the ALJ, the commissioner, has the burden of producing evidence of other work that the ALJ may not have. This requires the ALJ to first look at the medical vocational guidelines, known as the GRIDS, to see whether the claimant is disabled purely on their physical limitations, because the GRIDS cover only physical limitations. Second, if there are additional, what are known as non-exertion limitations, not physical limitations, then an ALJ may obtain vocational expert testimony as to the existence and numbers of other work. And this is consistent with the regulations, the Social Security rulings, and this circuit's case law. And here, the ALJ did everything he was supposed to do. He looked to the GRIDS, considering claimant's physical limitations, and the ALJ identified a GRID rule 202.14, which directed a finding of not disabled. This is at page 25 of the record. But because there were additional non-physical limitations, the ALJ properly obtained vocational expert testimony to analyze, consider the effects of those additional non-exertion limitations. That's at page, again, 25 of the record. The ALJ made findings based on this vocational expert testimony, that is the vocational expert work compatible with the claimant's functional limitations, age, education, and work experience. And the ALJ found that those constituted a significant number of jobs, supporting a denial of benefits. Now, claimant is arguing at first that the ALJ didn't account for his age and functional limitations at step five in determining whether there was other compatible work, a significant number of other jobs. But the ALJ did properly consider the GRIDS, and through that, considered the claimant's age and functional limitations. You can't reach a GRID rule without knowing what the age and functional limitations are. Those are factors in applying those GRID tables. And the ALJ, when you went to the vocational expert, questioned the vocational expert about the claimant's age and functional limitations, and ended up relying on the vocational expert's testimony. So the ALJ did account for age and functional limitations. Now, as to claimant's argument that the ALJ should have used, if I understand correctly, a different method for calculating the number of jobs, I don't know how to speak to that directly. There may be other ways, but here the ALJ did everything he was supposed to. The ALJ's method and the evidence that he obtained was within, again, the regulations, the social security rulings, and the circuit's case law. And as such, if substantial evidence, the vocational expert's testimony, supported the ALJ's findings, then the existence of possible alternative ways of obtaining evidence is irrelevant, because substantial evidence still supports the ALJ's findings. I should explain that considering the social security rulings that opposing counsel is vocational expert testimony for some types of non-physical limitations, that is, under those rulings, there may be certain functional limitations that really don't affect the applicability of the grids. So, for example, social security ruling 8515 has a statement, and I'll quote it, quote, crawling on hands and knees and feet is a relatively rare activity, even an arduous work, unquote. And with statements like that, it's possible that an ALJ might find a hypothetical claimant who has physical limitations, plus a limitation against crawling on hands and knees and feet, can still perform other work as shown by the grids, because that is the kind of easy, straightforward limitation that does not affect the work contemplated by the grids. But on the other hand, Mr. Montenegro, in this case, we've got some of the most dramatic erosion of the relevant base that I've seen in a case where benefits were denied, where, you know, the sedentary is out completely based on the lack of the ability to use both hands effectively. And then we've got sort of, at least as I imagine it, the light, unskilled work, he's kind of just boxed into this tiny corner of this handful of jobs. Why is that enough? Well, as I was saying, I think the ALJ did everything it was supposed to do. The ALJ presented those limitations, all the necessary information to the vocational expert testimony, to the vocational expert, I'm sorry, and the vocational expert identified three occupations and associated numbers of jobs upon which the ALJ relied to find that despite these limitations, the claimant could perform a significant number of other jobs existing in the national economy. But would you concede that as to one of the three positions that was identified by the expert, the claimant could not actually fulfill the requirements of that job? No, Your Honor, because that's the vocational expert function, is to take those functional limitations and to identify jobs and job numbers compatible with those functional limitations. I mean, even the judge said that he couldn't perform the one of, I think it was information clerk, and I might add how this man with his heart condition and, you know, without the being an usher, it's very difficult for me to understand. Yes, Your Honor, that's why, well, first, we're not saying that the claimant was completely unlimited, that he wasn't functionally limited at all. There were significant functional limitations. And as to the hands, the ALJ found, and this is at page 18 of the record in the ALJ's decision, that he was limited to occasional gripping, handling, and fingering with the left arm. Looking at it here, I think that's the limitation that the ALJ found. And having presented those limitations, that and the others, to the vocational expert, the vocational expert identified compatible occupations. That's the vocational expert's function. I don't, it might seem odd, but that's why the vocational expert's expertise is necessary, plus the vocational expert is there at the hearing, is subject to questioning, and is subject to allegations of lack of substantial evidence, as we're talking about here. But that's not the issue the claimant is raising. The issue the claimant is raising, as I understand it, is an alternative method of as I was saying, I don't think that that really detracts from the substantial evidence supporting the ALJ's findings, because the ALJ followed the process that he was supposed to follow. He secured vocational expert testimony. He relied upon it. I don't think that's being directly contested here. If I might, there's the one last issue I think that was raised to do with numbers of jobs, whether regional numbers of jobs versus national numbers of jobs were appropriate. As I stated in my brief, quickly, there was the act, the Social Security Act's definition of disability presents some competing concerns about regional numbers of jobs, jobs in the region in which the individual lives, isolated jobs. The commissioner acknowledged those in his regulations, acknowledged those concerns, and stated that national numbers are enough, that for the purposes of making a decision that comports with the act and the regulations, that national numbers of jobs are sufficient to satisfy the commissioner's burden in that respect. So in the end, if there's anything, if there are no further questions, I would just say the ALJ did everything he was supposed to do under the regulation, Social Security rulings in case law. The resulting evidence obtained that way and the ALJ's findings were therefore supported by substantial evidence. The existence of alternative ways of getting there really are irrelevant to that analysis. Thank you. Thank you very much, counsel. The case is taken under advisement and the court will be in recess.